UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FAISAL G. KHALAF, PH.D,

    Plaintiff,

vs.

FORD MOTOR COMPANY,
*a Delaware corporation;*
BENNIE FOWLER and
JAY ZHOU, *jointly and severally,*

    Defendants.

Case No.  2015-CV-12604
Hon. Marianne O. Battani

_____/

| | |
|---|---|
| Carol A. Laughbaum (P41711) | Elizabeth P. Hardy (P37426) |
| Raymond J. Sterling (P34456) | William B. Forrest III (P60311) |
| STERLING ATTORNEYS AT LAW, P.C. | Shannon V. Loverich (P53877) |
| Attorneys for Plaintiff | KIENBAUM, OPPERWALL, HARDY |
| 33 Bloomfield Hills Pkwy., Ste. 250 | & PELTON, P.L.C. |
| Bloomfield Hills, Michigan 48304 | Attorneys for Defendants |
| (248) 644-1500 | 280 N. Old Woodward Ave, Ste. 400 |
| claughbaum@sterlingattorneys.com | Birmingham, Michigan 48009 |
| rsterling@sterlingattorneys.com | (248) 645-0000 |
| | ehardy@kohp.com |
| | wforrest@kohp.com |
| | sloverich@kohp.com |

_____/

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Faisal G. Khalaf, Ph.D., by his attorneys Sterling Attorneys at Law, P.C., for his Second Amended Complaint and Demand for Jury Trial, submits the following:

*Jurisdiction and Parties*

1. This is an action for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.*; 42 USC 1981; and Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, arising out of Plaintiff's employment relationship with Defendants.

2. Plaintiff Faisal G. Khalaf (hereafter "Plaintiff," "Dr. Khalaf," or "Plaintiff Khalaf") resides within the Eastern District of Michigan.

3. Defendant Ford Motor Company (hereafter "Defendant," "Ford" or "Defendant Ford") is incorporated in the State of Delaware, and maintains its principal place of business and corporate headquarters in the Eastern District of Michigan.

4. Defendant Bennie Fowler (hereafter "Defendant Fowler" or "Fowler") is or was at material times Group Vice President of Quality and New Model Launch for Defendant Ford, was Plaintiff's direct or indirect supervisor, and upon information and belief resides within the Eastern District of Michigan.

5. Defendant Jay Zhou (hereafter "Defendant Zhou" or "Zhou") is or was at pertinent times a Ford Manager to whom Plaintiff reported, and upon information and belief resides within the Eastern District of Michigan.

6. The amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Plaintiff timely files the above claims within ninety (90) days of receipt of his EEOC issued Notice of Right to Sue letter, which was mailed to him on June 16, 2016.

8. This Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 USC 1331 (federal question), 28 USC 1343 (civil rights) and 28 USC 1367 (supplemental jurisdiction).

*Background Facts*

9. Plaintiff Khalaf became employed by Ford Motor Company in August 1999.

10. Dr. Khalaf was born in Lebanon; he is of Arabic descent, and is a Muslim.

11. During his employment, Dr. Khalaf served in various capacities including, most recently, Quality and Productivity Planning Manager.

12. At all times, Dr. Khalaf performed his job duties in a manner that was satisfactory or better.

13. In January 2012, Khalaf received a "top achiever" performance rating, a rating reserved for the top 5% of Ford employees.

14. In June 2012, Khalaf was placed under new management, and began reporting to Defendant Fowler.

15. Shortly thereafter, and continuing until June 27, 2014, Fowler subjected Plaintiff Khalaf to regular and frequent unwarranted criticism and hostility with regard to Plaintiff's ability to speak and understand English; overall demeaning and servile treatment; and further discrimination and harassment including disparate treatment with respect to training, and being assigned unrealistic work goals.

16. In or about February 2013, one of Plaintiff Khalaf's direct reports made a sexual harassment complaint, to Khalaf, against a co-worker. In response, Khalaf, among other things, reviewed Ford policy, met with both individuals, and advised the employee to report the matter to Ford HR.

17. Subsequently, Ford took the position that Khalaf should not have had the employee report the matter to HR.

18. In fact, in or about April 2013, Defendant Fowler advised Plaintiff that he was removing Khalaf from his position due to the "HR investigation," for which he blamed Khalaf.

19. In April 2013, Fowler advised Plaintiff that he was bringing in Jay Zhou to lead the Department. Defendant Zhou was effectively in his new role in July 2013 and an announcement went out in September 2013. Plaintiff began reporting directly to Zhou.

20. Zhou joined in and continued Fowler's discriminatory treatment of Plaintiff, including berating Plaintiff's English skills, which were considerably more proficient than that of Zhou.

21. Despite Plaintiff Khalaf's excellent performance during 2013, Fowler advised Khalaf that if he wanted to leave Ford, Fowler could "make it happen."

22. Zhou also marginalized Plaintiff by, among other things, giving assignments to, and reviewing Plaintiff's team members, while excluding Plaintiff, and refusing to support Plaintiff for other available positions for which Plaintiff was highly qualified.

23. On April 4, 2014, Plaintiff Khalaf filed a complaint with Ford HR stating that he was being subjected to discrimination and harassment on the basis of his national origin.

24. In a meeting with HR a few days later, Plaintiff provided further detail with respect to his discriminatory treatment.

25. On April 23, 2014, Plaintiff Khalaf was placed on a retaliatory Performance Enhancement Plan (PEP).

26. Subsequently, Zhou instructed Plaintiff to perform low level administrative tasks, suggested he take an English course, and continued to marginalize and belittle him, while ignoring Plaintiff's accomplishments.

27. Defendant's agents threatened Plaintiff with a "career transition plan" despite Plaintiff's proven performance and positive feedback with respect to Plaintiff's leadership from various sources, making clear Ford wanted him gone.

28. In June 2014, Plaintiff was forced to begin a medical leave due to workplace stress.

29. On January 27, 2015 Plaintiff filed a Charge of Discrimination with the EEOC and Michigan Department of Civil Rights.

30. On July 14, 2015, Plaintiff attempted to return to work from his disability leave, supplying all necessary paperwork.

31. Plaintiff also requested, in writing, accommodations for his disability.

32. Plaintiff was refused a return to work, and has been placed on an unpaid leave and "no job available" status.

33. Defendant Ford's representation that there is no work available for Plaintiff, even a temporary position, is false.

34. The discrimination and retaliation against Plaintiff is of a continuing nature and includes Plaintiff's termination by Ford on or about September 1, 2015.

## COUNT I
*National Origin Discrimination in Violation of Title VII*
*( as Against Defendant Ford)*

35. Plaintiff incorporates by reference paragraphs 1 through 34 above as though set forth in full again.

36. At all material times, Plaintiff Khalaf was an employee and Defendant Ford was his employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC 2000-e *et seq.*

37. Defendant Ford, by its agents, treated Plaintiff differently, harassed him, and subjected him to a hostile work environment and terminated him due to Plaintiff's national origin, Lebanese.

38. Defendant, by its agents, was predisposed to discriminate against Plaintiff on the basis of his national origin and ethnicity, and acted in accordance with that predisposition.

39. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

40. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected and he was forced off on a medical leave and terminated.

41. As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT II
### *Retaliation in Violation of Title VII*
### (*as against Defendant Ford*)

42. Plaintiff incorporates by reference paragraphs 1 through 41 above as though set forth in full again.

43. Title VII prohibits retaliation against persons who complain about national origin discrimination.

44. Plaintiff engaged in activity protected by Title VII when he complained of and opposed unlawful national origin discrimination and harassment and retaliation.

45. Defendant's retaliatory treatment and harassment of Plaintiff as set forth above, including placing him on a PEP, escalating their discriminatory treatment against him and terminating him, was in violation of the anti-retaliation provisions of Title VII.

46. The actions of Defendant by its agents were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

47. As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT III
### *Race/Ethnicity Discrimination in Violation of 42 USC 1981*
### (*as against all Defendants*)

48. Plaintiff incorporates by reference paragraphs 1 through 47 above as though set forth in full again.

49. At all material times, Plaintiff Khalaf was an employee and Defendants Ford, Fowler and Zhou were his employers, covered by and within the meaning of 42 USC 1981.

50. Defendants treated Plaintiff differently, harassed him, and subjected him to a hostile work environment and termination on the basis of his race/Arabic ethnicity.

51. Defendants were predisposed to discriminate against Plaintiff on the basis of his race/Arab ethnicity and acted in accordance with that predisposition.

52. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

53. As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected and he was forced off on a medical leave and subsequently terminated.

54. As a direct and proximate result of the Defendants' wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

### COUNT IV
*Retaliation in Violation of 42 USC 1981*
**(*as against all Defendants*)**

55. Plaintiff incorporates by reference paragraphs 1 through 54 above as though set forth in full again.

56. 42 USC 1981 prohibits retaliation against persons who complain about race discrimination, which includes ethnic and ancestry discrimination.

57. Plaintiff engaged in activity protected by 42 USC 1981 when he complained of and opposed unlawful discrimination and harassment, and retaliation.

58. Defendants' retaliatory treatment and harassment of Plaintiff as set forth above, including placing him on a PEP and escalating their discriminatory treatment against him and terminating him, was in violation of the anti-retaliation provisions of 42 USC 1981.

59. The actions of Defendants were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

60. As a direct and proximate result of the Defendants' wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT V
### *National Origin Discrimination in Violation of Michigan's Elliott-Larsen Civil Rights Act* **(as against all Defendants)**

61. Plaintiff incorporates by reference paragraphs 1 through 60 above as though set forth in full again.

62. At all material times, Plaintiff Khalaf was an employee and Defendants Ford, Fowler and Zhou were his employers covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*

63. Defendants treated Plaintiff differently, harassed him, subjected him to a hostile work environment and termination, due to Plaintiff's national origin, Lebanese.

64. Defendants were predisposed to discriminate against Plaintiff on the basis of his national origin and ethnicity, and acted in accordance with that predisposition.

65. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of Plaintiff.

66. As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected and he was forced off on a medical leave and terminated.

67. As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT VI
### *Retaliation in Violation of Michigan's Elliott-Larsen Civil Rights Act*
### (*as against all Defendants*)

68. Plaintiff incorporates by reference paragraphs 1 through 67 above as though set forth in full again.

69. Michigan's Elliott-Larsen Civil Rights Act prohibits retaliation against persons who engage in protected activity, including complaining about national origin discrimination, and participating in, or assisting others in pursuing, sexual harassment claims.

70. Plaintiff engaged in activities protected by Elliott-Larsen when he complained of and opposed unlawful national origin discrimination and harassment; and when he participated in and/or assisted his direct report in pursuing sexual harassment claims.

71. Defendant's retaliatory treatment and harassment of Plaintiff as set forth above, including removing him from his position, placing him on a PEP, escalating their discriminatory treatment against him and terminating him, was in violation of the anti-retaliation provisions of Elliott-Larsen.

72. The actions of Defendant by its agents were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

73. As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

### RELIEF REQUESTED

For all the foregoing reasons, Plaintiff Faisal G. Khalaf demands judgment against the Defendants as follows:

**A. Legal Relief:**

1. Compensatory damages in whatever amount he is found to be entitled;

2. Exemplary damages in whatever amount he is found to be entitled;

3. Punitive damages in whatever amount he is found to be entitled;

4. A judgment for lost wages and benefits in whatever amount he is found to be entitled;

5. An award of interest, costs and reasonable attorney fees; and,

6. Whatever other legal relief appears appropriate at the time of final judgment.

B. **Equitable Relief:**

1. An injunction out of this Court prohibiting any further acts of wrongdoing;

2. An award of interest, costs and reasonable attorney fees; and,

3. Whatever other equitable relief appears appropriate at the time of final judgment.

# JURY DEMAND

Plaintiff, by his attorneys, hereby demands a trial by jury of all issues in this cause.

**PROOF OF SERVICE**

I certify that on May 3, 2017, I filed the foregoing paper with the Clerk of the Court using the ECF system which will electronically send notification to all counsel of record.

/s/Carol A. Laughbaum
Sterling Attorneys at Law, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
claughbaum@sterlingattorneys.com

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By: /s/Carol A. Laughbaum
Carol A. Laughbaum (P41711)
Attorney for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500