UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAISAL G. KHALAF, Ph.D.,

      Plaintiff,

                                  Case No: 2015-CV-12604

v.

                                  Hon. Marianne O. Battani

FORD MOTOR COMPANY,
a Delaware corporation,
BENNIE FOWLER and                          Magistrate Judge
JAY ZHOU, jointly and severally,        Stephanie Dawkins Davis

      Defendants.

_____/

| STERLING ATTORNEYS AT LAW | KIENBAUM OPPERWALL HARDY |
|---|---|
| Carol A. Laughbaum (P41711) |   & PELTON, P.L.C. |
| Raymond J. Sterling (P34456) | Elizabeth P. Hardy (P37426) |
| Attorneys for Plaintiff | William B. Forrest III (P60311) |
| 33 Bloomfield Hills Parkway | Thomas J. Davis (P78626) |
| Suite 250 | Attorneys for Defendants |
| Bloomfield Hills, Michigan 48304 | 280 North Old Woodward Avenue |
| (248) 644-1500 | Suite 400 |
| claughbaum@sterlingattorneys.com | Birmingham, Michigan 48009 |
| rsterling@sterlingattorneys.com | (248) 645-0000 |
| | ehardy@kohp.com |
| | wforrest@kohp.com |
| | tdavis@kohp.com |

_____/

**Defendants' Revised Motion for Judgment as a Matter of Law under Rule 50(b), for a New Trial under Rule 59(a), to Alter or Amend the Judgment Under Rule 59(e), and for Remittitur**

Defendants Ford Motor Company ("Ford"), Bennie Fowler, and Jay Zhou, by their undersigned counsel, file this revised motion for judgment as a matter of law under Rule 50(b), for a new trial under Rule 59(a), to alter or amend the judgment under Rule 59(e), and for remittitur, in light of the Court's July 23, 2018 order and opinion. In support of their motion, Defendants state as follows:

1. Defendants rely on the accompanying brief and exhibits in support of their motion.

2. Plaintiff's counsel is aware of Defendants' position, but disagrees with Defendants' view, necessitating the filing of this motion.

WHEREFORE, Defendants request that the Court grant this motion, set aside the verdict, and grant judgment as a matter of law to all Defendants. If judgment as a matter of law is not granted in whole or in part, Defendants request that the Court order a new trial, alter/amend the judgment, or issue a remittitur as necessary.

Respectfully submitted,

KIENBAUM OPPERWALL
 HARDY & PELTON, P.L.C.

By: */s/Elizabeth P. Hardy*
     Elizabeth P. Hardy (P37426)
     William B. Forrest III (P60311)
     Thomas J. Davis (P78626)
Attorneys for Defendants
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
(248) 645-0000

Date: August 20, 2018          ehardy@kohp.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAISAL G. KHALAF, Ph.D.,

       Plaintiff,

                                    Case No: 2015-CV-12604

v.

                                      Hon. Marianne O. Battani

FORD MOTOR COMPANY,
a Delaware corporation,
BENNIE FOWLER and
JAY ZHOU, jointly and severally,

                                      Magistrate Judge
                                      Stephanie Dawkins Davis

       Defendants.

| | |
|---|---|
| STERLING ATTORNEYS AT LAW | KIENBAUM OPPERWALL HARDY |
| Carol A. Laughbaum (P41711) |   & PELTON, P.L.C. |
| Raymond J. Sterling (P34456) | Elizabeth P. Hardy (P37426) |
| Attorneys for Plaintiff | William B. Forrest III (P60311) |
| 33 Bloomfield Hills Parkway | Thomas J. Davis (P78626) |
| Suite 250 | Attorneys for Defendants |
| Bloomfield Hills, Michigan 48304 | 280 North Old Woodward Avenue |
| (248) 644-1500 | Suite 400 |
| claughbaum@sterlingattorneys.com | Birmingham, Michigan 48009 |
| rsterling@sterlingattorneys.com | (248) 645-0000 |
| | ehardy@kohp.com |
| | wforrest@kohp.com |
| | tdavis@kohp.com |

**Defendants' Brief in Support of Revised Motion for Judgment as a Matter of Law under Rule 50(b), for a New Trial under Rule 59(a), to Alter or Amend the Judgment Under Rule 59(e), and for Remittitur**

**Questions Presented**

1.      Should the Court enter judgment notwithstanding the verdict on Plaintiff's wrongful termination claim, consistent with its earlier ruling?

2.      Should the Court vacate all of the jury's damages award in light of the judgment notwithstanding the verdict on the wrongful termination theory?

3.      Should the Court hold that, as a matter of law, that Plaintiff's $1.7 million award of economic damages must be reduced to zero because it rests entirely on the invalid wrongful termination theory?

4.      Should the Court hold that Plaintiff's $15 million punitive damages award should be reduced to zero because, without the wrongful termination theory, the jury's answers to the verdict form do not support a punitive damages award as a matter of law?

5.      Should the Court hold that, to the extent a new trial is required, that (1) the claims resolved in Defendants' favor should not be retried, and (2) the remaining claims should be retried as to both damages and liability?

6.      Should the Court vacate the punitive damages award for other, independent reasons, including (1) the jury's findings preclude an award of punitive damages as to Ford; (2) the non-termination claims cannot support a $15 million punitive damages award; or (3) because the punitive damages award is unconstitutionally excessive?

7.      Should the Court grant judgment as a matter of law on all remaining claims?

8.      Should the Court alternatively award a new trial due to instructional errors and prejudicial argument by Plaintiff's counsel?

# Table of Contents

Page

Questions Presented ............................................................................................. i

Controlling or Relevant Authorities................................................................... iv

Introduction........................................................................................................ 1

Background ......................................................................................................... 2

Argument ............................................................................................................ 3

I.      Plaintiff's wrongful-termination claim is invalid as a matter of law, and its
        invalidation requires each of jury's damages awards to be vacated. ................. 3

        A.      The $1.7 million award for future pension and retiree health
                benefits must be vacated because it was based entirely on
                Plaintiff's wrongful termination claim.................................................. 5

        B.      The $15 million punitive damages award should be vacated or
                reduced to zero as a matter of law, as it was infected by Plaintiff's
                wrongful termination claim.................................................................... 5

        C.      The jury's $100,000 award for emotional distress damages must be
                vacated because it was infected by Plaintiff's wrongful termination
                claim...................................................................................................... 7

II.     A new trial on liability and damages would be required for all of the
        claims in which the jury found against Fowler, Zhou, or Ford........................... 7

        A.      No retrial is warranted as to the jury's findings favoring
                Defendants. ........................................................................................... 8

        B.      Any remaining issues were inevitably infected by the submission
                of the now-invalidated termination claim, and must be retried as to
                liability and damages. ........................................................................... 8

III.    As a Matter of Law, the Punitive Damages Award Cannot Stand...................... 9

        A.      Without the termination claim, the jury's answers to the verdict
                questions do not permit an award of punitive damages against
                Ford. ...................................................................................................... 10

        B.      Punitive Damages Cannot Be Awarded on the Non-Termination
                Claims. ................................................................................................... 12

        C.      The Punitive Damages Award is Unconstitutionally Excessive............................ 14

IV.  The trial evidence does not support the surviving liability claims as a matter of law. .................................................................................................. 18

    A.  There is no evidence to support *either* a claim of hostile environment based on national origin or race by Plaintiff's subordinates. .......................................................................................... 18

    B.  Plaintiff did not suffer a national-origin hostile environment by Fowler. ................................................................................................. 20

    C.  Plaintiff cannot claim retaliation based on the Burke matter................................ 21

    D.  Zhou's placing of Plaintiff on a PEP was not retaliatory as a matter of law. ................................................................................................. 23

V.  The sum of instructional errors and improper argument warrant a new trial on the harassment, retaliatory demotion, and retaliatory PEP claims.............................. 24

Conclusion .......................................................................................................................... 26

**Controlling or Relevant Authorities**

**Cases**                                                                                    **Page(s)**

*Am. Trim, L.L.C. v. Oracle Corp.*,
    383 F.3d 462 (6th Cir. 2004) ................................................................................ 18

*Bach v. First Union Nat. Bank*,
    486 F.3d 150 (6th Cir. 2007) ................................................................................ 18

*Barrett v. Kirtland Cmty. Coll.*,
    245 Mich. App. 306, 628 N.W.2d 63, 72 (2001) .................................................. 22

*Bennett v. Am. Med. Response, Inc.*,
    226 F. App'x 725 (9th Cir. 2007) ......................................................................... 15

*Bina v. Providence Coll.*,
    39 F.3d 21 (1st Cir. 1994) ...................................................................................... 21

*Blizzard v. Marion Tech. Coll.*,
    698 F.3d 275 (6th Cir. 2012) ................................................................................ 22

*Boutros v. Canton Reg'l Transit Auth.*,
    997 F.2d 198 (6th Cir. 1993) ................................................................................ 19

*Braun v. Ultimate Jetcharters, LLC*,
    828 F.3d 501 (6th Cir. 2016) ................................................................................ 22

*Bridgeport Music, Inc. v. Justin Combs Pub.*,
    507 F.3d 470 (6th Cir. 2007) ......................................................................... 16, 18

*Burlington Indus., Inc. v. Ellerth*,
    524 U.S. 742 (1998) ............................................................................................... 12

*Chicago Title Ins. Corp. v. Magnuson*,
    487 F.3d 985 (6th Cir. 2007) ................................................................................ 16

*Clark Cty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001) ............................................................................................... 22

*Clark v. Chrysler Corp.*,
    436 F.3d 594 (6th Cir. 2006) ................................................................................ 16

*Cline v. Michigan Dep't of Corr.*,
    2003 WL 1949555 (Mich. Ct. App. Apr. 24, 2003) ............................................. 20

*Commeree v. Hantman*,
    25 F. App'x 1 (D.C. Cir. 2001) ............................................................................... 4

*Cooper v. City of N. Olmsted,*
   795 F.2d 1265 (6th Cir. 1986) ................................................................ 23

*Devine v. Patteson,*
   242 F.2d 828 (6th Cir. 1957) .................................................................. 8

*Dooms v. Stewart Bolling & Co.,*
   68 Mich. App. 5 (1976) ........................................................................... 9

*E.E.O.C. v. Indiana Bell Tel. Co.,*
   256 F.3d 516 (7th Cir. 2001) ................................................................ 13

*Edmond v. State of Tenn. Dep't of Prob.,*
   386 F. App'x 507 (6th Cir. 2010) ......................................................... 23

*Ellis v. Gallatin Steel Co.,*
   390 F.3d 461 (6th Cir. 2004) ............................................................. 4, 6

*El-Zabet v. Nissan N. Am., Inc.,*
   211 F. App'x 460 (6th Cir. 2006) ......................................................... 12

*Fox v. Hayes,*
   600 F.3d 819 (7th Cir. 2010) ................................................................ 18

*Fragante v. City & Cty. of Honolulu,*
   888 F.2d 591 (9th Cir. 1989) ................................................................ 21

*Fuhr v. Sch. Dist. of City of Hazel Park,*
   364 F.3d 753 (6th Cir. 2004) ................................................................ 24

*Gasoline Prod. Co. v. Champlin Ref. Co.,*
   283 U.S. 494 (1931) ................................................................................ 8

*Gilbert v. DaimlerChrysler Corp.,*
   470 Mich. 749, 685 N.W.2d 391 (2004) .............................................. 12

*Hannoon v. Fawn Eng'g Corp.,*
   324 F.3d 1041 (8th Cir. 2003) .............................................................. 21

*Hardin v. Caterpillar, Inc.,*
   227 F.3d 268 (5th Cir. 2000) .................................................................. 9

*Jackson v. Quanex Corp.,*
   191 F.3d 647 (6th Cir. 1999) ................................................................ 25

*Jones v. Cont'l Corp.,*
   789 F.2d 1225 (6th Cir. 1986) .............................................................. 14

*Kelly v. Senior Ctrs., Inc.*,
    169 F. App'x 423 (6th Cir.2006) ............................................................. 20

*Kim v. Nash Finch Co.*,
    123 F.3d 1046 (8th Cir. 1997) ............................................................. 17

*Kolstad v. Am. Dental Ass'n*,
    527 U.S. 526 (1999) ............................................................. 10, 11, 13

*Kusens v. Pascal Co.*,
    448 F.3d 349 (6th Cir. 2006) ............................................................. 8

*Leon T. v. Fed. Res. Bank*,
    823 F.2d 928 (6th Cir. 1987) ............................................................. 12

*Loesel v. City of Frankenmuth*,
    692 F.3d 452 (6th Cir. 2012) ............................................................. 4, 6

*Lowery v. Circuit City Stores, Inc.*,
    206 F.3d 431 (4th Cir. 2000) ............................................................. 10

*Lulaj v. Wackenhut Corp.*,
    512 F.3d 760 (6th Cir. 2008) ............................................................. 5, 6

*Lyles v. District of Columbia*,
    17 F. Supp. 3d 59 (D.D.C. 2014) ............................................................. 18

*McDonald v. Union Camp Corp.*,
    898 F.2d 1155 (6th Cir. 1990) ............................................................. 4

*McKenna v. City of Royal Oak*,
    2008 WL 11399748 (E.D. Mich. Sept. 5, 2008) ............................................................. 9

*McKenna v. Edgell*,
    617 F.3d 432 (6th Cir. 2010) ............................................................. 9

*Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*,
    725 F.3d 571 (6th Cir. 2013) ............................................................. 24

*Morgan v. Hilti, Inc.*,
    108 F.3d 1319 (10th Cir. 1997) ............................................................. 24

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998) ............................................................. 19, 22

*Parker v. Gen. Extrusions, Inc.*,
    491 F.3d 596 (6th Cir. 2007) ............................................................. 10, 11

*Pena v. Ingham Cty. Rd. Comm'n*,
   255 Mich. App. 299, 660 N.W.2d 351, 358 (2003) ................................................ 23

*Phillips v. UAW Int'l*,
   854 F.3d 323 (6th Cir. 2017) ................................................................................. 19

*Pollard v. E.I. DuPont De Nemours, Inc.*,
   412 F.3d 657 (6th Cir. 2005) ................................................................................. 17

*Raytheon Co. v. Hernandez*,
   540 U.S. 44 (2003) ................................................................................................... 4

*Richardson v. Commc'ns Workers of Am., AFL-CIO*,
   530 F.2d 126 (8th Cir. 1976) ................................................................................... 9

*Saunders v. Branch Banking*,
   526 F.3d 142 (4th Cir. 2008) ................................................................................. 15

*Sayger v. Riceland Foods, Inc.*,
   735 F.3d 1025 (8th Cir. 2013) ............................................................................... 10

*Smith v. Ashland, Inc.*,
   250 F.3d 1167 (8th Cir. 2001) ............................................................................... 24

*Smith v. Leggett Wire Co.*,
   220 F.3d 752 (6th Cir. 2000) ................................................................................. 20

*Spence v. Bd. of Educ. of Christina Sch. Dist.*,
   806 F.2d 1198 (3d Cir. 1986) ................................................................................... 9

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003) ...................................................................................... 14, 15, 17

*Vance v. Ball State Univ.*,
   570 U.S. 421 (2013) ............................................................................................... 13

*Virtual Maintenance, Inc. v. Prime Computer, Inc.*,
   11 F.3d 660 (6th Cir. 1993) ................................................................................. 4, 6

*Wade v. Automation Pers. Servs., Inc.*,
   612 F. App'x 291 (6th Cir. 2015) .......................................................................... 22

*Wasek v. Arrow Energy Servs., Inc.*,
   682 F.3d 463 (6th Cir. 2012) ........................................................................... 19, 22

*Wathen v. Gen. Elec. Co.*,
   115 F.3d 400 (6th Cir. 1997) ................................................................................. 12

*Wesley v. Campbell*,
    864 F.3d 433 (6th Cir. 2017) ................................................................................... 15

**Introduction**

It is well-established Sixth Circuit law that a jury's verdict must be vacated when a legally-erroneous theory was submitted to the jury, and the jury's verdict may have rested on that impermissible theory. That happened here: a wrongful termination claim was submitted to the jury, it found liability on that theory, and it returned a general damages verdict. But the Court has repeatedly stated that it will enter judgment as a matter of law in Defendants' favor on the wrongful termination theory. That impermissible theory plainly affected the jury's verdict. Because the jury's award of economic damages ($1.7 million) rested *entirely* on the termination, and its award of punitive damages and emotional distress damages unquestionably rested—at least in part—on those grounds, the Court should at a minimum vacate the damages verdict.

But the Court should do more. The jury's adverse findings on the claims other than wrongful termination have been infected by the jury's mistaken belief that Ford wrongfully terminated Plaintiff. With the elimination of the wrongful termination theory, those answers on the verdict form do not provide a rational basis for the remainder of the jury's findings.  As a result, there is no basis for punitive damages as a matter of law. Further, without the impermissible wrongful termination theory, the evidence on the remaining claims supports judgment as a matter of law in Defendants' favor, even viewing the evidence in the light most favorable to the verdict.

Finally, even if the Court found that some claims should be retried, that retrial must involve both liability and damages. The remaining claims rest on alleged emotional harms, which are so intertwined with questions of liability that a new trial solely on damages would be unfair. Moreover, instructional errors, compounded by prejudicial argument by Plaintiff's counsel, warrant a new trial on liability. The Court should vacate the damages award, and rule in Defendants' favor as a matter of law or order a new trial on liability and damages for the remaining claims where the jury imposed liability.

**Background**

On March 28, 2018, the jury returned a verdict concluding that Plaintiff did not prove that he was demoted or terminated because of his national origin or his race.  R. 74, Verdict Form, Questions 1 and 2.  The jury concluded that Plaintiff did prove that he was subjected to a severe or pervasive hostile environment by his subordinates based on his national origin or race, but found that the only defendant responsible for hostile environment was Bennie Fowler—not Defendants Zhou or Ford—and that Fowler acted only based on national origin, not race. *Id*., Questions 3 and 4. The jury further concluded that Plaintiff proved (a) retaliatory demotion by Fowler and Ford; (b) a retaliatory Performance Enhancement Plan ("PEP") by Zhou; and (c) retaliatory termination against Ford. *Id*., Question 5.

The jury awarded Plaintiff economic damages of $1.7 million for future pension and retirement losses and emotional distress damages of $100,000.  *Id*., Question 6.  The jury specifically concluded that Plaintiff did not prove that he was entitled to an award of punitive damages against Fowler or Zhou.  *Id*., Question 7.  The jury concluded that Plaintiff proved that he was entitled to punitive damages against Ford only.  *Id*.  The jury awarded punitive damages of $15 million, only against Ford. *Id*., Question 8. Following the jury's verdict and discharge, the Court stated on the record:

> We have a directed verdict motion to deal with. The Court – and I don't know what you are going to do with this. I can tell you what my decision is right now.
>
> As to the termination or firing, whatever it is called, I direct a verdict on that. I find that the… defendant offered plaintiff a job, that there is no evidence that there was any job in his level available, that does not seem to be contested. That they gave him another job with the same salary even though it involved a demotion. I don't find that that is discrimination or that they did it based on anything other than the plaintiff decided not to take the job.

3/28 Tr. 35-36. (Ex. A, Trial Tr. Excerpts). The Court then indicated that "I'm not sure how that's going to affect the judgment of the verdict form because there's 15 million against Ford,

but I will leave that for you with that decision to present briefs." *Id.* at 36. In reliance on that oral ruling and direction, Defendants filed a motion asking the Court to reject Plaintiff's proposed judgment and set aside the verdict under Rules 58(b) and 59(d) due to the impact of the Court's ruling on the termination issue, and alternatively for relief under Rule 50(b), 59(a), 59(e), and for remittitur. R. 82.

On July 23, 2018, however, the Court entered an opinion and order regarding entry of judgment on the verdict. R. 96. The Court explained its "intention to grant a judgment as a matter of law in Defendants' favor to the extent that Plaintiff's claims rest on a theory of wrongful termination," *id.* at Pg ID 3957, but denied without prejudice Defendants' pre-verdict Rule 50(a) motion, and stated that the issues therein would be addressed "in the context of Defendants' post-trial motion brought under Rule 50(b)." *Id.* at 3957-58. It appears that the Court's intention was to rest on the already-filed briefing, which already is largely predicated on the invalidity of the wrongful termination claim and fully presents that issue. Nevertheless, Defendants moved for clarification as to whether the Court wanted new briefs to be filed, and having heard no response, they file this revised motion and brief out of an abundance of caution.

## Argument

### I.   Plaintiff's wrongful-termination claim is invalid as a matter of law, and its invalidation requires each of jury's damages awards to be vacated.

As set forth in Defendants' directed verdict motion, there is no legitimate factual dispute that (1) Khalaf was on a leave of absence from June 28, 2014 through July 13, 2015, (2) he was told no LL5 jobs were available upon his return, (3) he himself found no LL5 jobs after his own search, (4) Ford offered him an LL6 job at the same rate of pay, with a deadline—extended at Khalaf's request—of August 31, 2015, and (5) on August 28, 2015, Khalaf received a different job offer for more pay at BASF, which he accepted after negotiating more pay. 3/14 Tr. 116-17,

128, 132-138; 3/15 Trial Tr. 17-23 (Ex. A, Trial Tr. Excerpts); Pl's Ex. 122, 129, 130, 132-33 (Ex. C- Pl. Trial Exhibits). That is a voluntary quit as a matter of law and logic. *See, e.g.*, *Commeree v. Hantman*, 25 F. App'x 1 1 (D.C. Cir. 2001); R. 66 (citing case law). Moreover, the termination of an employee who refuses to accept a new job—even when the new job is allegedly a demotion—is legitimate and non-discriminatory. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1159 (6th Cir. 1990) (plaintiff's termination after refusing a different position that was considered a demotion, despite identical pay, was legitimate and non-discriminatory); *accord Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 (2003) (finding that such a termination "can, in no way, be said to have been motivated by" protected status, without more.). As discussed *supra* at 2, the Court agreed that the record does not support wrongful termination, and that it will grant judgment notwithstanding the verdict on Plaintiff's termination claim.

This, in turn, requires invalidation of the jury's damages awards. Under Sixth Circuit law, a jury verdict cannot stand when the verdict may have been based on an improper theory of liability. *Loesel v. City of Frankenmuth*, 692 F.3d 452, 467–68 (6th Cir. 2012); *Virtual Maintenance, Inc. v. Prime Computer, Inc.,* 11 F.3d 660, 667 (6th Cir. 1993). The Sixth Circuit has explained why such a verdict cannot stand: when a "jury return[s] a damages award in response to multiple theories of liability without identifying the theory upon which they had relied," the court "cannot determine whether the damages award rests on" an improper theory, and so the damages award must be reversed. *Ellis v. Gallatin Steel Co.,* 390 F.3d 461, 472 (6th Cir. 2004).

Here, the jury was allowed to consider Plaintiff's legally-invalid wrongful termination claim, resulting (1) in an economic damages award that rests *entirely* on the termination theory, and therefore must be vacated and reduced to zero as a matter of law; and (2) in punitive damages and emotional distress damages that were infected by the incorrectly-submitted wrongful ter-

-4-

mination claim. These damages should be set aside.

### A. The $1.7 million award for future pension and retiree health benefits must be vacated because it was based entirely on Plaintiff's wrongful termination claim.

It is axiomatic that a plaintiff who has not been wrongfully terminated is not entitled to post-employment damages or front pay. *Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 767 (6th Cir. 2008) (holding that plaintiff who proved discriminatory denial of promotion, but not wrongful termination, was not entitled to damages beyond the date she quit). Thus, the fact that Plaintiff was not wrongfully terminated as a matter of law necessarily voids the jury's advisory verdict of $1.7 million in front pay (*i.e.*, pension and retiree health losses.)

Here, there is no question here that Plaintiff's economic damages were front pay, *and* that the front pay rested entirely on his claim of wrongful termination. His counsel admitted at the jury instruction conference that his economic losses would accrue in the future, 3/26 Tr. 103, and the jury was specifically instructed that "damages… sustained to the present time" included *only* emotional harms, and that future damages would include emotional harms and pension/retiree health damages. 3/27 Tr. 96-97. Moreover, Plaintiff's economic damages expert expressly set $1.7 million as the amount of alleged pension and retiree health losses resulting from Plaintiff's *termination* from Ford. Pl's Ex. 140, Paranjpe Report (Ex. C- Pl. Trial Exhibits) Because Plaintiff was not wrongfully terminated, there is no conceivable basis for the $1.7 million award of future losses, and so that award must be reduced to zero. *See Lulaj*, 512 F.3d at 767 ("the district court was correct to reduce, as a matter of law, the jury award for front pay to zero to conform to its finding" that plaintiff quit.)

### B. The $15 million punitive damages award should be vacated or reduced to zero as a matter of law, as it was infected by Plaintiff's wrongful termination claim.

The principle that a general verdict cannot stand when it may have rested on an impermissible theory of liability applies to the punitive damages award as well. *See Loesel*, 692 F.3d at

467–68; *Virtual Maintenance, Inc.*, 11 F.3d at 667 (6th Cir. 1993); *cf. Ellis*, 390 F.3d at 472.

The jury considered the invalid wrongful termination claim, and found Ford (but not Fowler or Zhou) was responsible for the termination on grounds of "retaliation." R. 74, Pg ID 2401. Here, the punitive damages verdict was a general verdict—it did not specify the legal basis or bases of that punitive damages award. *Id.* Because one of the theories on which the jury found liability—wrongful termination—is invalid, the general punitive damages verdict cannot stand.

Moreover, a review of the jury instructions and verdict form renders it impossible to conclude that the jury's punitive damages award rested on anything *but* the termination theory. As a result, punitive damages should be reduced to zero as a matter of law. *Lulaj*, 512 F.3d at 767. Of critical importance, there are only *two* places on the jury verdict form where the jury checked a box concluding that Plaintiff had proven his claims against Ford: (1) retaliatory demotion; and (2) retaliatory termination. *See* R. 74. As to the retaliatory demotion claim, Fowler was also held liable, *see id.*, but the jury expressly found that Fowler was *not* liable for punitive damages at all. *Id.* Given that Fowler was indisputably the decision-maker on the demotion, the jury must have concluded that demotion did not warrant punitive damages against Fowler and Ford.

By contrast, Ford *alone* was found responsible for the termination, and punitive damages were awarded against Ford *alone*. *Id.* at Pg ID 2401. Thus, wrongful termination was the only possible basis for punitive damages against Ford. But because Ford did not terminate Plaintiff, it cannot be held legally responsible for the $15 million in punitive damages that the jury necessarily attributed to the wrongful termination claim.

The amounts of the damages awards prove the point:  The jury awarded $1.8 million in actual damages—$1.7 million in front pay and $100,000 in emotional damages. R. 74; 3/26 Tr. 36. Thus, the jury found nearly 95% of the actual harm was front pay, solely attributable to the

termination. Given that the jurors were instructed to consider the "relationship of any award of punitive damages to the amount of actual harm the Plaintiff suffered," 3/27 Tr. 99, the fact that nearly all of the actual damages were for the termination claim demonstrates that the punitive damages were also termination-based damages.

Accordingly, not only is there a risk that the impermissible theory infected the verdict (which is enough to set it aside under Sixth Circuit law), but the jury's other findings make clear that Ford's punitive damages liability actually rested on the impermissible theory.

### C. The jury's $100,000 award for emotional distress damages must be vacated because it was infected by Plaintiff's wrongful termination claim.

The jury's award of $100,000 in emotional distress damages should also be set aside, because the jury was instructed on the improper termination theory, R. 74, and that theory could have infected the emotional distress damages. 3/27 Tr. 96-98. Plaintiff testified that he was emotionally damaged as a result of the end of his Ford career, that he would not have peace of mind because BASF did not give him a pension, and that he would be emotionally harmed by the termination for the rest of his life. 3/14 Tr. 129-31. Because the jury awarded Plaintiff a general sum of $100,000 in emotional distress damages, and because the Court cannot rule out that the jury's award was based on emotional harm arising out of the termination, it must set aside that award as well.

### II.  A new trial on liability and damages would be required for all of the claims in which the jury found against Fowler, Zhou, or Ford.

If the Court does not grant that judgment as a matter of law on all remaining claims, *see infra* Part IV, there should be a new trial. *See supra* at Part I. In that new trial, the Court (1) should *not* retry the issues that the jury found in Defendants' favor because the directed-verdict theory on termination did not taint those jury findings; and (2) should retry the remaining claims

-7-

on both liability and damages because Plaintiff's only remaining source of damages—emotional

harm—is inextricably intertwined with liability issues.

### A.  No retrial is warranted as to the jury's findings favoring Defendants.

It is well-established that when a legal ruling affects only parts of a jury's verdict, it is er-

ror to retry those parts unaffected by the ruling. *Devine v. Patteson*, 242 F.2d 828, 832 (6th Cir.

1957); *accord, e.g.*, 11 Wright, Miller, *et al.*, Federal Practice & Procedure § 2814 (this rule

"now may be regarded as settled"). The jury's liability findings that favor Defendants plainly

were not infected by the elimination of the wrongful termination claim. A "Plaintiff is not enti-

tled to a new trial to establish the elements of the claim he failed to make out when he presented

his case to the jury." *Kusens v. Pascal Co.*, 448 F.3d 349, 367 (6th Cir. 2006). Thus, the issues

resolved in Defendants' favor should not be retried.

The claims that should be deemed settled, and which should not be retried, are as follows:

(1) Plaintiff was not demoted based on his national origin or race; (2) Zhou and Ford are not lia-

ble for a national-origin hostile environment; (3) Defendants are not liable for race-based hostile

environment; (4) Fowler and Ford did not retaliate as to the PEP; and (5) Fowler's and Zhou's

conduct did not give rise to an entitlement to punitive damages for Plaintiff.

### B.  Any remaining issues were inevitably infected by the submission of the now-invalidated termination claim, and must be retried as to liability and damages.

When the "question of damages… is so interwoven with that of liability that the former

cannot be submitted to the jury independently of the latter without confusion and uncertainty," a

retrial only on damages would "amount to a denial of a fair trial." *Gasoline Prod. Co. v.

Champlin Ref. Co.*, 283 U.S. 494, 500 (1931). Damages and liability are intertwined in cases in-

volving personal injury and alleged emotional harm. *See Devine v. Patteson*, 242 F.2d 828, 833

(6th Cir. 1957) (liability and damages interwoven in "personal injury cases" and cases involving

-8-

"emotional features"); *McKenna v. City of Royal Oak*, 2008 WL 11399748, at *1 (E.D. Mich. Sept. 5, 2008) (emotional distress) (Ex. F, Unpublished Cases), *aff'd sub nom. McKenna v. Edgell*, 617 F.3d 432 (6th Cir. 2010); *Dooms v. Stewart Bolling & Co.*, 68 Mich. App. 5, 22–23 (1976) ("courts do not favor the practice of granting partial new trials in personal injury cases… owing to the fact that liability and damage issues are commonly interwoven").

Consistent with this principle, issues of liability and damages are intertwined in employment discrimination cases. *See, e.g.*, *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1202 (3d Cir. 1986) (emotional and punitive damages could not be tried separately in discrimination case, as such harms can only be evaluated in light of all the circumstances involving the employment decisions); *Richardson v. Commc'ns Workers of Am., AFL-CIO*, 530 F.2d 126, 130 (8th Cir. 1976) ("claim for mental anguish and humiliation" are intertwined with liability; the jury must decide what conduct, and by which people, caused injury and who was responsible for what conduct under agency principles); *Hardin v. Caterpillar, Inc.*, 227 F.3d 268, 272 (5th Cir. 2000) ("we are persuaded of the practical inseparability of the issues of intent, of damages for emotional injury, and of punitive damages in this [FMLA and discrimination] case"). So too here. Plaintiff's only remaining damages claim involves emotional distress arising out of a hostile environment, the PEP, and the demotion, as the result of alleged actions and decisions by numerous people over a lengthy period of time. The issues of damages and liability under such circumstances are so inextricably intertwined that a fair retrial requires the jury to examine both liability and damages anew.

## III.    As a Matter of Law, the Punitive Damages Award Cannot Stand.

The very fact that judgment as a matter of law will be granted on the termination claim means that the punitive damages award should be set aside and there should be a new trial on

damages and liability on the remaining claims where the jury found for Plaintiff. But the Court should go further and hold that punitive damages should not be retried at all, because without the wrongful termination claim there is no basis for punitive damages as a matter of law. Moreover, there are other independent reasons why the punitive damages award must be vacated.

### A. Without the termination claim, the jury's answers to the verdict questions do not permit an award of punitive damages against Ford.

The Sixth Circuit, applying *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526 (1999), has held that an award of punitive damages in employment discrimination requires a three-part showing:

- *First*, "the plaintiff must show that the *individuals perpetrating the discrimination* acted with malice or reckless disregard as to whether the plaintiff's federally protected rights were being violated."

- *Second*, "the principal-employer is liable only if the agent was employed in a managerial capacity and was acting in the scope of employment"; and

- *Third*, "even if the plaintiff is successful in proving the first two [parts], the defendant can nonetheless avoid liability for punitive damages if it can show that it engage in good faith efforts to comply with Title VII."

*Parker v. Gen. Extrusions, Inc.*, 491 F.3d 596, 602 (6th Cir. 2007) (emphasis added). Those requirements apply to punitive damages under Title VII and Section 1981. *See Kolstad*, 527 US at 535-36 (noting Title VII's "malice or reckless indifference" standard is the background federal tort standard for punitive damages as determined by Supreme Court in *Smith v. Wade*); *Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 441 (4th Cir. 2000) ("*Kolstad* is equally applicable to clarify the common law punitive damages standard with respect to a § 1981 claim"); *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1034 (8th Cir. 2013) ("the standard for punitive damages is the same under § 1981 and Title VII"). Under *Kolstad*, the mental state required for punitive damages is high: it "pertain[s] to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad*, 527 U.S. at 535.

Applying those requirements here, the jury's answers demonstrate that Plaintiff has failed

to justify punitive damages against Ford as a matter of law. The jury found, in its answer to Question 7, that Fowler and Zhou's conduct did *not* warrant the imposition of punitive damages.[1] R. 74, Pg ID 2402. However, Fowler and Zhou were the only alleged "individual[s] perpetrating the discrimination" who were "employed in a managerial capacity" for the surviving claims against Ford; *i.e.*, the demotion and retaliation. Because the jury found that their actions did not give rise to punitive damages against them, Ford cannot be responsible for punitive damages based on those actions either. *See Parker*; 491 F.3d at 602; *Kolstad*, 527 US at 535-36.

This is not to say that the jury's verdict was inconsistent; rather, the verdict form confirms that the termination was the sole basis for the punitive damages award against Ford. *Supra* at 5-7. There were other managerial employees besides Fowler and Zhou involved in the "termination"; Plaintiff presented evidence only as to one of them, Mike Lank. 3/22 Tr. 165-66 & Def's Ex. 208. And Ford alone—not Fowler or Zhou—was found liable for the termination, R. 74, meaning that the jury necessarily based Ford's termination liability, and punitive-damages liability, on the acts of these *other* managerial agents. With the termination claim vacated, and Fowler and Zhou absolved of liability for punitive damages, the mindset of these other "termination" decision-makers becomes irrelevant. Nor is there sufficient evidence in the record to show that Lank or any other managerial employee took adverse action against Plaintiff with the requisite mindset for punitive damages required by *Kolstad*. The punitive damages award against Ford should thus be vacated.

---

[1] Plaintiff elicited *no* testimony that Fowler or Zhou were aware of Title VII or Section 1981—or, critically, that Fowler or Zhou knew that "Arab ethnicity" was considered a race, such that uncapped punitive damages could be awarded against them under Section 1981. Indeed, given that Plaintiff's counsel expressly told the jury that "[a] lot of employment lawyers like myself are not familiar with the definition of race discrimination under the specific statutes we are citing," 3/27 Tr. 32, it is difficult to see how Plaintiff could possibly have met this burden.

-11-

### B. Punitive Damages Cannot Be Awarded on the Non-Termination Claims.

A review of the remaining liability claims likewise confirms that the jury's punitive damages verdict could only have rested on the wrongful termination claim, which in turn means that a punitive damages claim should not be permitted on retrial. To assist the Court in analyzing this argument, the following chart illustrates the Plaintiff's claims, which Defendants may be sued on those claims, and whether punitive damages are available on those claims:

| Statute | Plaintiff's Claims | Individual Liability? | Punitive Damages? |
|---|---|---|---|
| Section 1981 | Race discrimination only | Yes | Yes |
| Title VII | National origin discrimination only | No | $300,000 cap |
| Elliott-Larsen | National origin discrimination only | Yes | No |

**1. Alleged Hostile Environment by Fowler.** *First*, the jury found Fowler—and <u>only</u> Fowler—responsible for any hostile environment, and only on the basis of Plaintiff's national origin and not his race. But Fowler could not have been held liable for punitive damages, because the only basis for Fowler's liability finding is Elliot-Larsen, which does not permit punitive damages. *See Gilbert v. DaimlerChrysler Corp.*, 470 Mich. 749, 685 N.W.2d 391 (2004). Fowler cannot be liable under Title VII, because individual employees cannot be sued under Title VII. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 406 (6th Cir. 1997). And Section 1981 cannot be the source of punitive damages because national-origin claims are not cognizable under that statute. *Leon T. v. Fed. Res. Bank*, 823 F.2d 928, 931 (6th Cir. 1987) ("discrimination based solely on the place or nation of a plaintiff's origin is not actionable under § 1981."); *El-Zabet v. Nissan N. Am., Inc.*, 211 F. App'x 460, 462 (6th Cir. 2006) ("it is legally impossible to state a claim for national-origin discrimination under section 1981").

**2. Alleged Subordinate Harassment.** Harassment by non-managerial employees is not an activity considered within the scope of employment as a matter of law. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 757 (1998). That is why non-managerial harassment is *not* actionable

absent (at least) negligence by managerial employees who allow a known hostile environment to continue. *See Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013). And because punitive damages require proof of *managerial* malice or reckless indifference, *see Kolstad*, Ford could only be liable for co-worker harassment based on its *own* allegedly discriminatory acts taken in furtherance of the subordinates' harassment. *E.E.O.C. v. Indiana Bell Tel. Co.*, 256 F.3d 516, 527 (7th Cir. 2001) (holding that *employer*'s liability for sex harassment punitive damages required evidence that the employer effectively approved of ongoing harassment by a co-worker who the employer knew had long history of sexually harassing women).

Consistent with this authority, the jury was instructed that the Plaintiff must do more than prove a hostile environment to hold Ford liable—it also had to find that Ford, as the employer, was "legally responsible for the hostile environment." 3/27 Tr. 94-96; Jury Instruction 25 (Ex. B – Jury Instructions). Although the jury found that Plaintiff's subordinates subjected him to a hostile environment, it did not find that *Ford* "subjected plaintiff to a severe or pervasive hostile environment" on either race or national-origin grounds. R. 74, Pg ID 2400-01. The verdict form thus indicates that Ford was not responsible for the hostile environments.

Even if the jury had found Ford responsible for alleged subordinate harassment based on his national origin or race, that finding could not support punitive damages here because the jury found that Fowler and Zhou did not act with the necessary intent for punitive damages. R. 74. As a result, Plaintiff could only rest punitive damages on the actions of *other* managers. But there is no managerial employee who condoned subordinate harassment, let alone based on national origin or race. Plaintiff's complaint of "harassment" was first made in April 2014, and related to his time as the QS& PP manager (June 2012 to August 2013). It was not ongoing at the time of his April complaint, nor did it continue thereafter. As there was no ongoing hostility to "con-

done," Ford cannot be liable for subordinate harassment.

**3.**      **Retaliation**. Finally, the jury's verdict form—once the invalid wrongful termina-
tion claim is disregarded—can only possibly support retaliation under Title VII, and not Section
1981. That is a critical point because a retaliation claim arising under Title VII (unlike a Section
1981 claim) is subject to a $300,000 punitive damages cap. Here, Plaintiff alleged two protected
activities: (1) alleged opposition to sex harassment in February 2013, related to Pauline Burke;
and (2) an alleged complaint of race harassment in April 2014, related to himself. And while the
purported "termination" came after both of those alleged protected activities, the demotion and
PEP both came *before* the race complaint: the allegedly retaliatory demotion occurred in April
2013, 3/14 Tr. 72, and the decision to put Plaintiff on a PEP was decided upon and finalized be-
fore the April 2014 complaint.  *See infra* Part IV.D.2.

In other words, the jury logically could have found a race-retaliatory termination on the
case it was presented. But with that termination out of the case, the jury's findings no longer
support a race-based theory of retaliation. "[F]ederal law is quite clear that § 1981 prohibits only
race discrimination, not sex discrimination," *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1231 (6th Cir.
1986), and thus Plaintiff's alleged complaint related to sex discrimination cannot give rise to
Section 1981 liability, but only Title VII. Given that Title VII retaliation claims are subject to a
$300,000 cap on punitive damages, the $15 million award of punitive damages cannot stand
based on a retaliation theory.

### C.  The Punitive Damages Award is Unconstitutionally Excessive.

Finally, even if the punitive damages award is not vacated in its entirety (for the reasons
outlined above), the $15 million punitive damages award is plainly excessive and therefore un-
constitutional under *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). *State
Farm* holds that a trial court must review punitive damages awards for excessiveness using three

-14-

guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id*. Further, the "wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award." *Id.* at 427.

**1. There are no "reprehensibility" factors.** A trial court's review of "reprehensibility" considers whether (1) "the harm caused was physical as opposed to economic;" (2) "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others;" (3) "the target of the conduct had financial vulnerability;" (4) "the conduct involved repeated actions or was an isolated incident;" and (5) whether "the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Id.* at 419. These factors are absent here.

*First*, Plaintiff did not suffer physical harm. The Supreme Court suggested that this element requires "physical assault or trauma" as opposed to emotional harm like humiliation and outrage—because emotional damages already incorporate a punitive element. *State Farm*, 538 U.S. at 426; *accord, e.g.*, *Saunders v. Branch Banking*, 526 F.3d 142, 152–53 (4th Cir. 2008) (distinguishing between "economic and emotional harm" vs "physical harm"); *Bennett v. Am. Med. Response, Inc.*, 226 F. App'x 725, 728 (9th Cir. 2007) (same). Following that lead, the Sixth Circuit has held that this factor requires either physical injury or similarly egregious conduct such as the threat of violence, seizure, or detention incident to arrest (handcuffing, confinement, etc.). *Wesley v. Campbell*, 864 F.3d 433, 444 (6th Cir. 2017). None of that happened here.[2]

*Second*, there was no proof of indifference or reckless disregard to the "health or safety of

---

[2] Plaintiff's claims that Fowler was "large" and "intimidating"—characterizations rooted in offensive racial stereotypes—are irrelevant as the jury found that his conduct did not warrant punitive damages. There is no such accusation of intimidation or anything close by anyone else.

others." This is a case where Plaintiff was allegedly harmed by a change in his duties that he felt was a demotion, and placement on a performance plan. Nothing in this record indicates actions that risked the safety and harm of Plaintiff or anyone else. This factor is not established.

*Third*, Plaintiff was not "financially vulnerable." The Sixth Circuit has explained that this factor relates to the infliction of economic harm, and not the disparity in wealth between the parties. *Clark v. Chrysler Corp.*, 436 F.3d 594, 604 (6th Cir. 2006) (holding that, for this factor to apply, the "defendant's wealth must bear some relation to the harm sustained by the plaintiff"). Plaintiff suffered no economic harm here—indeed, as the Court recognized in discussing the directed verdict motion, Ford offered Plaintiff a new job at the same salary. 3/28 Tr. 35-36.

*Fourth*, the conduct was isolated rather than repeated. The Sixth Circuit has held that this factor requires that "similar reprehensible conduct be committed against various different parties rather than repeated reprehensible acts within the single transaction with the plaintiff." *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 1000 (6th Cir. 2007); *accord, e.g.*, *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 487 (6th Cir. 2007) (noting Plaintiff's obligation to introduce evidence of similar misconduct against *other* people). Plaintiff offered no such evidence of similar wrongdoing by Ford against other employees.

*Fifth*, there was no proof of "intentional malice, trickery, or deceit" by Ford. The actual decision-makers (Fowler and Zhou) were found not liable for any punitive damages, and the scant other evidence that Plaintiff presented of others' conduct related to purported incompetence—*i.e.*, that the investigation of his claims was not adequate. This should not even have been considered by the jury (as the Court instructed, the adequacy of the investigation was irrelevant), and it certainly does not demonstrate intentional malice, trickery, or deceit by Ford.

**2. The ratio of punitive damages to actual harm is extremely high, and far out of line**

**with comparable statutes.** As to the second guidepost, the Supreme Court has held that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process" and "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425. Further, "when compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Pollard v. E.I. DuPont De Nemours, Inc.*, 412 F.3d 657, 668 (6th Cir. 2005). Here, the punitive damages award of $15 million as compared to a $100,000 award of actual damages—a 150:1 ratio—is far, far in excess of constitutional limits.

As to the third guidepost, the $15 million award is also significantly out of line with what an employer might expect under similar statutes. Specifically, Title VII caps race-retaliation punitive damages *plus* emotional harm at $300,000 total. While Section 1981 does not have a statutory cap for race-based retaliation, the Title VII cap for identical misconduct is an appropriate guidepost. *See, e.g.*, *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1068 (8th Cir. 1997) (reducing $7 million punitive damages award under Section 1981 as excessive, and reducing award to $300,000, in part, due to the authorized cap for "comparable conduct" under Title VII). Even if one assumes, incorrectly, that Section 1981 could serve as the basis for a punitive damages award, the verdict far exceeds what might be expected under the comparable Title VII.

**3. The guideposts call for no punitive damages, or 1:1 at most.** In *State Farm*, the Supreme Court held that the existence of a single reprehensibility factor "may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." *State Farm,* 538 U.S. at 419. As noted above, there are no reprehensibility factors present—and so punitive damages are not warranted at all.

-17-

Even if the Court found one or two such factors, a 1:1 or 2:1 ratio of compensatory to punitive damages is the most that would be warranted here. *See, e.g.*, *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 487 (6th Cir. 2007) (holding that a ratio in the range of 1:1 to 2:1 is constitutional maximum where only one reprehensibility factor is present); *Bach v. First Union Nat. Bank*, 486 F.3d 150, 156 (6th Cir. 2007) (1:1 ratio between compensatory and punitive damages appropriate where only one reprehensibility factor present). Plaintiff received a substantial award of $100,000 in emotional harm (which includes a punitive component), and Title VII would allow *at most* $200,000 more in punitive damages. This means that, even if the Court did find some reprehensibility factors were established, the punitive damages award would have to be reduced to a 1:1 ($100,000) or 2:1 ($200,000) ratio.

## IV.   The trial evidence does not support the surviving liability claims as a matter of law.

This Court reviews a post-verdict motion for judgment as a matter of law by reviewing at the evidence in the light most favorable to the verdict. *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 471 (6th Cir. 2004); *Fox v. Hayes*, 600 F.3d 819, 844 (7th Cir. 2010). Under that standard, the Court should grant judgment in Defendants' favor on all remaining claims.

### A.   There is no evidence to support *either* a claim of hostile environment based on national origin or race by Plaintiff's subordinates.

While the jury's verdict form indicated that Plaintiff experienced a hostile work environment created by his subordinates, that finding was unsupported by the evidence, and the Court should grant judgment as a matter of law.

*First*, in the unusual scenario where a supervisor claims harassment by his subordinates, a harassment claim is invalid when "the supervisor-plaintiff had the ability to stop the harassment and failed to do so." *Lyles v. District of Columbia,* 17 F. Supp. 3d 59, 70-71 (D.D.C. 2014). That is because in a case of non-managerial harassment, an employee must take advantage of correc-

-18-

tive opportunities, and if a supervisor-employee has the power to engage in self-help by disciplining the harassers, he must do so. *Id.* at 69-71. Here, Plaintiff testified that he had the power to discipline his allegedly problematic subordinates, but did not do so because "that's not what I want to be known for." 3/14 Tr. 54.

*Second*, Plaintiff failed to establish that any subordinate harassment was either (1) *based on* race or national origin; or (2) severe or pervasive. *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017) (elements for non-manager race harassment); *Boutros v. Canton Reg'l Transit Auth.*, 997 F.2d 198, 203 (6th Cir. 1993) (same for national-origin). Again, the only evidence against Plaintiff's subordinates was "disrespect" or antipathy by Javor, Miller, and Burke. 3/14 Tr. 42-49, 72, 93-94; 3/15 Tr. 59-61, 91-92, 101; 3/21 Tr. 169-172; 3/22 Trial Tr. 45-46. A review of that testimony shows *no* testimony that these subordinates made any comments about Plaintiff's accent, let alone his Middle Eastern national origin or "race." The only other witness to this "disrespect" was Dietlin, who offered no evidence of anti-Arabic bias or discrimination based on Plaintiff's accent. *See* 3/15 Tr. 59-61, 91-92, 101.

The *only* "evidence" that remotely relates to Plaintiff's accent in this context involved an anonymous comment left in a drop box that criticized his "writing and understanding English." 3/14 Trial Tr. 50-55. But, of course, being anonymous, Plaintiff can only speculate that this was left by one of his subordinates—let alone that it was left by one of the subordinates he accuses (Javor, Miller, or Burke.) And mere disrespect or antipathy is not actionable unless there is evidence it was motived by a discriminatory animus. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (Title VII does "not prohibit all verbal or physical harassment in the workplace; it is directed only at "*discriminat[ion]* ... because of" protected characteristics"); *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 467 (6th Cir. 2012) ("conduct of jerks, bullies,

-19-

and persecutors is simply not actionable under Title VII unless they are acting because of the victim's [protected status].”); *Cline v. Mich. Dep't of Corr.*, 2003 WL 1949555, at *6 (Mich. Ct. App. Apr. 24, 2003) (“personality conflicts” and “belligerence” is not “evidence of racial harassment. Anti-discrimination laws are not to be utilized as “a ‘general civility code’ designed to purge the workplace of all boorish or even all harassing conduct.”) (Ex. F, Unpublished Cases).

Even assuming the anonymous comment was discriminatory—and comments about English skills in the context of workplace communications is *not* by itself discrimination, *infra* at 19—it plainly would not be “severe or pervasive.” Courts have rejected such claims in cases involving even unambiguously racist comments. *See, e.g.*, *Kelly v. Senior Ctrs., Inc.*, 169 F. App'x 423 (6th Cir.2006) (evidence insufficient where staff members used N-word regarding participants in a program the plaintiff supervised, called them “pigs,” referred to someone as a “token black,” tolerated racist behavior of others, told three racist jokes, and made rude comments about African-American staff members’ bathroom habits); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 760–61 (6th Cir. 2000) (racial slur directed at plaintiff, racist cartoon circulated in workplace, and racially-offensive reference to another employee insufficient evidence). A single, anonymous criticism of Plaintiff's English is not enough. The Court should therefore hold that there was no subordinate harassment as a matter of law.

### B.  Plaintiff did not suffer a national-origin hostile environment by Fowler.

The jury has already found that Fowler did not subject Plaintiff to a *race*-based hostile environment. This Court should hold that there was also no evidence of *national-origin*-based hostile environment, as Plaintiff cannot show hostility toward his Lebanese national-origin.

Plaintiff's *sole* evidence against Fowler that might relate to national-origin are alleged comments about criticism of English skills. But courts have repeatedly held that merely criticizing a person's English language skills is not, by itself, sufficient to prove national-origin bias.

-20-

*See, e.g., Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1048 (8th Cir. 2003) (holding it does "not find that criticizing a foreign employee's facility with the English language constitutes discrimination against a particular race or national origin"); *Bina v. Providence Coll.*, 39 F.3d 21, 26 (1st Cir. 1994) ("references to audience difficulty in understanding Dr. Bina may reasonably be interpreted as expressing a concern about his ability to communicate to students rather than discriminatory animus based on ethnicity or accent."); *Fragante v. City & Cty. of Honolulu*, 888 F.2d 591, 596–97 (9th Cir. 1989) ("there is nothing improper about an employer making an honest assessment of the oral communications skills of a candidate for a job when such skills are reasonably related to job performance."). Moreover, it is probable that the jury, hung up on the irrelevant term "manner of speaking," found discrimination *not* because of Plaintiff's accent but because of his English skills. *See infra* Part V. That cannot support the verdict as a matter of law.

Likewise, the mere fact that Fowler was allegedly "mean" to Plaintiff is not enough to assume that Fowler had national-origin animus. In order to find that Fowler engaged in national-origin discrimination, Plaintiff must present evidence that the criticism of his English skills reflected bias because Plaintiff had an accent. But what such evidence was there? Plaintiff *never* testified that Fowler said anything to him about Lebanon, his accent, or a Lebanese accent. Moreover, Fowler's replacement—Dr. Zhou—had a much more pronounced accent than Plaintiff. This fact takes on critical weight in light of the new standard of review: the jury found that Fowler was *not* biased against Plaintiff's Arabic ethnicity (*i.e.*, the race claim), so whatever evidence there is must relate to something non-racial about the *Lebanese* accent that sufficiently distinguishes it from Zhou's accent to reflect national-origin animus. There was no such evidence.

### C.  Plaintiff cannot claim retaliation based on the Burke matter.

Plaintiff's claim that Pauline Burke was "sexually harassed" was tenuous: Plaintiff alleged that Pauline Burke was told to "put her big girl pants on" by her co-worker David Buche,

and that he told Burke to file a complaint in response. Pl's Ex. 16. This, however, was not protected activity for two reasons, and thus it could not serve as the basis of a retaliation claim.

*First*, protected activity requires an "overt stand against suspected illegal discriminatory action," and a person "may not invoke the protections of the Act by making a vague charge of discrimination." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (internal quotation marks omitted); *accord, e.g., Barrett v. Kirtland Cmty. Coll.*, 245 Mich. App. 306, 319, 628 N.W.2d 63, 72 (2001) (plaintiff must "clearly convey to an objective employer" a claim of sex discrimination; "generic, non-sex-based complaints" are insufficient). Here, Plaintiff's "report" to Ford did not assert that Burke was being sexually harassed, or that he told her to file a *sexual harassment* complaint—instead, he only said "I have asked Pauline to file a claim with you because she made accusation over a discussion she had with David Buche yesterday." 3/22 Tr. 17, 65; Pl's Ex. 15 & 16. This is not a claim of sex discrimination.

*Second*, even if Plaintiff had expressly indicated that he was opposing "sex discrimination," his mistaken belief would not have been objectively reasonable, and thus was not protected. *See, e.g., Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 512 (6th Cir. 2016) (opposition requires "an objectively reasonable and good faith belief" of a violation); *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (same). Sex discrimination occurs when "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80; *accord Wasek*, 682 F.3d at 467. Here, at most, Plaintiff knew Buche used the phrase "big girl," in a non-sexual way, during an argument. That is not sex discrimination, let alone sexual *harassment*; even a male employee's use of the gendered vulgarity "bitch" is not sufficient to raise sex-discrimination concerns. *See, e.g., Wade v. Automation Pers. Servs., Inc.*, 612 F. App'x 291, 297–98 (6th Cir. 2015).

-22-

Here, because the jury's retaliation verdict necessarily rested on the non-protected Burke "complaint," the retaliatory demotion claim fails as a matter of law.

**D.  Zhou's placing of Plaintiff on a PEP was not retaliatory as a matter of law.**

The jury found that Zhou—not Ford or Fowler—retaliated against Plaintiff by placing him on a PEP. But this retaliation claim also fails as a matter of law.

**1. Plaintiff concedes that Zhou did not retaliate over the Burke "complaint."** Zhou was not even in the QS&PP Department when Burke made the "complaint"; for that reason, Plaintiff's counsel expressly conceded to this Court that "we are not claiming as against Dr. Zhou that he retaliated … against Khalaf for the 2013 protected activity before Zhou was in the picture" and "I'm not going to try to ask the jury to find liability against Zhou for the Pauline Burke complaint; it was before his time." 3/26 Tr. 71. That concession is dispositive here.[3]

**2. Zhou could not have retaliated based on the April 2014 complaint.** Plaintiff also did not show that the PEP was caused by his April 2014 complaint. The undisputed evidence is that (1) Zhou's 2013 performance review of Plaintiff stated that a PEP would be coming if Plaintiff did not improve his performance; and (2) Zhou decided to institute the PEP in March 2014

---

[3] Even without the concession, Zhou could not be held liable for retaliation related to Burke.

- *First*, the Burke matter did not involve protected activity. *Supra* at 21-22.

- *Second*, Plaintiff has no evidence that Zhou was even aware of the Burke matter, let alone evidence that Zhou knew that the *topic* of Burke was sex discrimination, as a prima facie retaliation claim requires. *Edmond v. State of Tenn. Dep't of Prob.,* 386 F. App'x 507, 513–14 (6th Cir. 2010).

- *Third*, the PEP did not come until almost 14 months after the Burke complaint, and nearly 8 months after Zhou became Plaintiff's supervisor. 3/14 Tr. 61; 3/19 Tr. 105, 121, 167-68; Def. Ex. 159. In both cases, this time gap is far too long to raise a causal inference of retaliation. *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986).

- *Fourth*, the only basis for individual liability against Zhou for sex-based retaliation is Elliot-Larsen, *see supra* at 11-12. But unlike Title VII, ELCRA subjects retaliation claims to the same "materially adverse" standard as discrimination claims—and thus a PEP alone, without a loss of pay or benefits, cannot materially adverse. *Pena v. Ingham Cty. Rd. Comm'n*, 255 Mich. App. 299, 312, 660 N.W.2d 351, 358 (2003).

and processed the PEP paperwork *before* Plaintiff made his complaint in April 2014. 3/19 Tr. 150-52 & Def's Ex. 26 (Ex. D – Def. Trial Ex.). *See Smith v. Ashland, Inc.*, 250 F.3d 1167, 1174 (8th Cir. 2001) (no inference of causation from poor review occurring after protected activity, when employer "began documenting problems with [employee's] performance" two years before); *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997) (no retaliation where "oral and written warnings" of misconduct occurred "both before and after… she filed the charge of discrimination"). And the law does not reward Plaintiff's tactic of delaying a meeting where he suspected a PEP would be issued, and instead filing a complaint for the purpose of derailing it. *See* 3/14 Tr. 92-94; 3/19 Tr. 105, 163-167; 3/22 Tr. 96, 142, 167-176; Pl's Ex. 56 & 64; Def's Ex. 132-135, 137, 138, 141, 145, 147-149. As Plaintiff has no other evidence of a retaliatory PEP— the only surviving claim against Zhou—the Court should grant judgment as a matter of law.

**V.     The sum of instructional errors and improper argument warrant a new trial on the harassment, retaliatory demotion, and retaliatory PEP claims.**

Even if Defendants' other requests are not granted, the Court should order a new trial based on the individual and cumulative effects of erroneous jury instructions and improper, prejudicial argument by Plaintiff's counsel. *See, e.g., Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 579 (6th Cir. 2013) (new trial warranted over jury instructions that "taken as a whole, [were] misleading or give an inadequate understanding of the law"); *Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 760 (6th Cir. 2004) (courts have broad discretion to order a new trial based on prejudicial closing argument by a party's attorney).

*First*, a combination of jury instructions and improper argument by counsel suggested to the jury that it could merely *assume* that undifferentiated hostility towards a Lebanese Arab was based on national-origin and race discrimination. Over Defendants' vigorous objections, R.64, Pg ID 2176-77; 3/26 Tr. 121-27, the Court allowed the jury to be instructed that "Even hostility,

-24-

conduct and comments directed at a plaintiff that are not expressly racial or discriminatory in nature may contribute to his hostile work environment, if you find that that conduct would not have occurred but for the fact of the plaintiff's race or national origin." Jury Instr. 27. The anti-discrimination laws are not a general civility code, and generic antipathy towards a person is not enough to support a national-origin or race-discrimination claim. The case that Plaintiff cited—*Jackson v. Quanex Corp.*, 191 F.3d 647, 655, 662 (6th Cir. 1999)—held only that when a person used a racial slur, a subsequent act of hostility by the same person could be considered connected, and thus race-based. But that is far different from what the instruction said in this case, which was that Plaintiff needed no express evidence of racial or national-origin animus *at all*, and could simply decide, without *any* overt evidence of race- or national-origin animus, that that generic hostility would not have occurred but for discrimination.

Exacerbating that error, Plaintiff's counsel told the jury to go beyond the instruction, and to *presume*—without evidence—that hostility was motivated by national-origin or race animus. During closing argument, Plaintiff's counsel told the jury that "[n]o one from Ford is going to come in here and admit to having prejudice against somebody of Arabic descent or equate Arabic people with terrorists, but the reality is we live in a post-911 world and people of Arabic descent, like Dr. Khalaf, and people who have a Middle Eastern accent like Dr. Khalaf, are not always judged by the content of their character but rather by awful stereotypes." 3/27 Tr. 14. She then invited the jury to "decide what the motivation was of these individuals in this QS and PP department who wanted to see Dr. Khalaf fail." *Id.* Defendant objected to this argument, and sought a curative instruction, which was denied. 3/27 Tr. 78-79. The jury, however, cannot simply "decide" that motivation without *evidence* of race or national-origin discrimination. Here, the only possible evidence was evidence of generic antipathy and one anonymous comment criticiz-

ing Plaintiff's English skills. These errors warrant a new trial on any remaining claims.

*Second*, there is a significant likelihood that the jury erroneously believed that mere English-language criticism was sufficient to find national-origin discrimination. The jury was instructed, in relevant part: "Discrimination based on accent or manner of speaking can be national origin discrimination. The fact that Plaintiff has a foreign accent is not sufficient to establish a claim of national origin discrimination based on accent or manner of speaking." Jury Instr. 18. Defendants had requested further instruction that English criticism alone was not evidence of national-origin discrimination, which was rejected. 3/26 Tr. 48-52, 59-60; Ex. E (Proposed Instruction). But that appears to be how the jury interpreted Instruction 18. It submitted a March 27 jury question asking to define "manner of speaking" but *not* "accent" – suggesting that it believed the two terms had different meanings. As explained in Defendants' trial brief, "manner of speaking" is synonymous with "accent," and Defendants asked the jury to be so instructed— which the Court denied. R. 71, Pg ID 2391. In other words, the jury (1) understood what "accent" was," (2) could not reach a verdict solely on "accent," and so sought instruction on "manner of speaking," and (3) was not told that "manner of speaking" is synonymous with accent. It is highly likely that the jury believed—incorrectly—that Plaintiff's English skills were his "manner of speaking" and that criticism of that speaking was national origin discrimination. The curative instruction would have eliminated that misconception. A new trial is warranted on this basis too.

Finally, as described *supra*, a new trial is necessarily required because the jury was instructed on an invalid wrongful termination claim. These errors further demonstrate why that retrial must address both liability *and* damages.

## Conclusion

The Court has stated that it will grant judgment a matter of law on the wrongful termination claim. That, in turn, requires that the verdict be set aside. The Court should grant judgment

as a matter of law to Defendants on the remaining claims, and award a new trial on both liability and damages for any that survive.

Respectfully submitted,

KIENBAUM OPPERWALL
  HARDY & PELTON, P.L.C.

By:   */s/Elizabeth P. Hardy*
        Elizabeth P. Hardy (P37426)
        William B. Forrest III (P60311)
        Thomas J. Davis (P78626)
      Attorneys for Defendants
Dated:  August 20, 2018        ehardy@kohp.com

## Certificate of Service

I hereby certify that on April 25, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

(no manual recipients)

/s/Elizabeth P. Hardy
Kienbaum Opperwall Hardy
 & Pelton, P.L.C.
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI  48009
(248) 645-0000
ehardy@kohp.com
(P37426)

295356